# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
### SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Randy L. Bertram, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No.  1:08-cv-093 |
| | ) | |
| Leann K. Bertsch, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

_____

Before the court is Randy L. Bertram's Petition under 28 U.S.C. § 2254 for a Writ of Habeas

Corpus by a Person in State Custody and Respondent's ("State's") Motion to Dismiss.  For the

reasons set forth below, the undersigned recommends that the State's motion be granted and the

petition be dismissed with prejudice.

## I.      BACKGROUND

The following summary of the background of this case is taken from the North Dakota

Supreme Court's opinion in State v. Bertram, 2006 ND 10, 708 N.W.2d 913 (Bertam I), affirming

Bertram's state-court convictions upon direct appeal:

> [¶ 2] On January 16, 2004, Joan Bertram ("Joan") and Randy were divorced
> by a default divorce decree that awarded Joan the parties' residence.  On January 29,
> 2004, Joan obtained a temporary disorderly conduct restraining order against Randy,
> and the Williams County Sheriff's Department served that order on him.  The order
> prohibited Randy from having any contact with Joan except through an attorney and
> from coming within 100 feet of her residence or place of employment.  At about 8:00
> a.m. on February 8, 2004, Randy entered Joan's residence through a window and
> spoke with her.  According to Randy, he was attempting to get business and tax
> records for his construction business, which were in an office in the residence.

> [¶ 3] The State charged Randy with violating the disorderly conduct
> restraining order under N.D.C.C. § 12.1-31.2-01 for allegedly entering Joan's home
> and speaking to her and with criminal trespass under N.D.C.C. § 12.1-22-03(1) for

1

allegedly entering her home, knowing he was not licensed or privileged to be in the home.  While Randy was in custody on those charges, he allegedly spit on Gaylen Anderson, a correctional officer with the Williams County Sheriff's Department, while Officer Anderson was attempting to administer medications to him.  The State charged Randy with contact by bodily fluids under N.D.C.C. § 12.1-17-11(1)(b) and (3) for allegedly spitting on Officer Anderson, while Anderson was acting in the scope of his duties.  In September 2004, a jury convicted Randy of criminal trespass and of violating the disorderly conduct restraining order, and in October 2004, a second jury convicted him of contact by bodily fluids.

Bertram I at ¶'s 2-3.

On December 20, 2004, Bertram was sentenced to one year imprisonment on the charge pertaining to the violation of the disorderly conduct restraining order and four years imprisonment on the criminal trespass charge with the sentences to run consecutively.  On the contact by bodily fluids charge, Bertram was sentenced to five years with the entire sentence suspended for five years from the date of Bertram's release from imprisonment or termination of his parole on the other charges, whichever was later.[1]   Bertram will be on supervised probation while the suspended sentence runs. (Doc. No. 10, Ex. 5).

A direct appeal was taken with the assistance of counsel.  That appeal raised seven issues:

1.    "There was insufficient evidence to support the jury's verdict of guilty on the charge of criminal trespass, and whether the court erred in denying Bertram's motion for judgment of acquittal."

2.    "Trying Bertram for both criminal trespass and violation of disorderly conduct restraining order constituted double jeopardy."

3.    "The court's failure to include a culpability requirement for the violation of disorderly conduct restraining order charge constituted reversible error."

---

[1] Bertram is not challenging the contact by bodily fluids conviction.  He was also convicted of terrorizing on August 15, 2005, for threatening to kill the prosecuting attorney and judge in the criminal trespass and disorderly conduct restraining order cases and his ex-wife's divorce attorney.  He was sentenced to 5 years imprisonment with all but 9 months suspended.  The 9 months was to run consecutive to the sentences on the criminal trespass and disorderly conduct restraining order cases.

4.      "Statements regarding felony status of contact by bodily fluids charge constituted reversible error."

5.      "Contact by bodily fluids conviction must be reversed due to failure to allege all essential elements in the information."

6.      "The court's failure to inform counsel in writing of contact by bodily fluids charge jury instruction constituted reversible error."

7.      "Bertram was denied his right to effective assistance of counsel."

(Doc. No. 10, Ex. 21). See Bertram I, at ¶¶'s 4-43.  The convictions for violating the disorderly conduct restraining order, criminal trespass, and contact by bodily fluids were affirmed on January 31, 2006, in Bertram I, supra.

On February 5, 2007, Bertram filed an application for state post-conviction relief.  The post-conviction application was filed *pro se* and contained three claims:

1.      "The State failed to bear their burden."

2.      "A civil judgment can not be used to prove an element in a criminal case, or it is insufficient to prove an element beyond reasonable doubt."

3.      "A void and fraudulent judgment is not evidence of anything, it can be attacked in the criminal proceeding."

(Docket 10, Ex. 9).

On April 4, 2007, Bertram, again acting *pro se*, submitted a motion to amend his post-conviction application.  His amended post-conviction application added six additional claims.

4.      "The conduct pleaded in the petition failed to state a claim upon which relief could be granted, the TRO order was insufficient."

5.      "The no contact order was overbroad, is a prior restraint."

6.      "The petition for the TRO failed to state a claim upon which relief could be granted for a no contact order."

3

7.      "The facts fail to state a claim that the conduct was "intrusive or unwanted" conduct, the TRO was acquired by extrinsic fraud."

8.      "There are two other equitable reasons why the petition for the TRO fails to state a claim upon which relief in equity can be granted."

9.      "Randy had ineffective assistance of counsel."

(Doc. No. 10, Ex. 10).

On May 9, 2007, the state trial court summarily denied all of Bertram's claims, except the claims of ineffective assistance of counsel. A hearing on the ineffective assistance of counsel claims was scheduled for June 28, 2007. Before the hearing could be held, Bertram filed a *pro se* notice of appeal. Bertram then hired an attorney. His attorney filed a motion for remand, and the North Dakota Supreme Court remanded the case back to the trial court for a hearing on the ineffective assistance of counsel claims. A hearing was then scheduled for September 21, 2007. (Docket No. 10, Exs. 11A & B, 12, 12 A & B, & 13).

On August 30, 2007, Bertram's attorney filed an amended application for post-conviction relief. The amended application contained two ineffective assistance of counsel claims. Bertram, acting *pro se*, requested the amended application be withdrawn, citing his attorney's failure to consult with him before filing the petition. On September 13, 2007, Bertram's attorney filed a second amended application for post-conviction relief. The application deleted the second claim of ineffectiveness that was proposed to be added by counsel's earlier amended petition. Bertram was still dissatisfied and fired his attorney. He requested that the second amended application be withdrawn. (Doc. No. 10, Exs. 14, 14A, 15, & 15A & B).

Bertram filed a motion for reconsideration of the trial court's May 9, 2007, order dismissing most of his claims and also asked that the September 21, 2007, hearing be canceled. The trial court

denied the request for a continuance and attempted to proceed with the hearing as scheduled. However, Bertram refused to substantively participate. As a consequence, the court concluded that Bertram had waived his right to a hearing on the claims of ineffective assistance and denied them for lack of evidence. The court also denied Bertram's request for reconsideration of the court's prior order summarily dismissing his other claims. (Doc. Nos. 10, Exs. 17 & 18; 11-2).

Bertram appearing *pro se* appealed the denial of his post-conviction application to the North Dakota Supreme Court. His appellate brief addressed eight issues:

1. "The trespass claims raised in the post-conviction application were not fully and finally decided on direct appeal and thus are not res judicata."

2. "A void judgment is no judgment and can not be res judicata. It does not exist."

3. "Even if the claim is identical or is closely identical, res judicata does not necessarily or automatically apply."

4. "A defendant in a criminal case and in a post-conviction application can make a collateral attack on a judgment being used as evidence against him."

5. "Not allowing a collateral attack on a judgment used as evidence against him, denies to the defendant his right to defend."

6. "Bertram had ineffective assistance of counsel."

7. "No evidentiary hearing was needed to prove ineffective assistance of counsel, it could be decided on summary disposition."

8. "A fair hearing on the post-conviction was denied."

(Doc. No. 10, Ex. 23).

The North Dakota Supreme Court summarily affirmed the dismissal of Bertram's application for post-conviction relief. Bertram v. State, 2008 ND 24, 747 N.W.2d 136 (Bertram II). Bertram petitioned the United States Supreme Court for a writ of certiorari. His petition was denied on October 6, 2008. Bertram v. North Dakota, 129 S.Ct. 191 (2008).

Bertram next filed his Section 2254 petition with this court on November 4, 2008.  His petition contains seven claims:

Claim 1:      "Trespass case: The state failed to bear their burden of proof."

Claim 2:      "Disorderly Conduct T.R.O. Violation: Here, the state failed to state a claim for a disorderly conduct temporary restraining order."

Claim 3:      "Of the T.R.O.  The no contact provision in the T.R.O. is overbroad, a prior restraint."

Claim 4:      "The T.R.O. petition failed to state a claim for a no contact order."

Claim 5:      "The T.R.O. petition failed to state a claim that my wife didn't consent to the conduct.  It failed to claim intrusive and unwanted conduct and was acquired by extrinsic fraud."

Claim 6:      "The T.R.O. petition failed to state a claim for relief in equity."

Claim 7:      "Ineffective counsel at trial and on direct appeal: Counsel didn't raise the above issues at trial or on direct appeal."

(Doc. No. 1).

The State filed a motion to dismiss on January 7, 2009.  Bertram filed a response on January 27, 2009.  The State filed a reply on February 3, 2009.  The matter is now ripe for consideration.

## II.   GOVERNING LAW

### A.    Scope of Review

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to determine whether a person is being held in violation of the United States Constitution or other federal law.  In most cases, this review is limited because, as a matter of federalism and comity, the primary responsibility for ensuring compliance with federal law in state-court criminal proceedings rests with the state courts.

In keeping with this policy, § 2254(d) limits federal-court review when the state courts have addressed the federal claims on the merits to instances when a person is being held in custody pursuant to a state-court decision that (1) is directly contrary to established federal law as enunciated by the United States Supreme Court, (2) is an objectively unreasonable application of Supreme Court precedent, or (3) is based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding.  See 28 U.S.C. § 2254(d); see generally Woodford v. Visciotti, 537 U.S. 19, 26-27 (2002 (per curiam); Williams v. Taylor, 529 U.S. 362, 399-413 (2000); Williams v. Taylor, 529 U.S. 420, 436-437 (2000).[2] This highly deferential standard of review under § 2254(d) is often referred to as "AEDPA deference" because it was enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  E.g.  Pederson v. Fabian, 491 F.3d 816, 824-825 (8th Cir. 2007).

Also, in keeping with the policy of placing primary responsibility for the enforcement of federal rights upon the state courts, § 2254 imposes a number of additional rules and procedures to limit federal-court "retrials" of state-court criminal proceedings under the guise of federal habeas corpus. See Bell v. Cone, 535 U.S. 685, 693 (2003).  Subdivisions (b) & (c) impose the long-

---

[2] The Supreme Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning and has described the differences as follows:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  Id., at 405-406, 120 S.Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  Id., at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.  Id., at 409- 410, 120 S.Ct. 1495. See also id., at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. 685, 694 (2002); see also Early v. Packer, 537 U.S. 3, 7-11 (2002) (per curiam).

standing requirement that federal courts may only consider habeas claims that have first been exhausted using available state-law procedures.  Subdivision (e)(2) requires that the petitioner develop the factual bases for the federal claims in the state-court proceedings by limiting the availability of federal evidentiary hearings to those situations in which the federal claims rely upon a new, retroactive law or are based on facts that could not have been previously discovered by the exercise of due diligence. Finally, subdivision (e)(1) provides that state-court factual findings carry a presumption of correctness, which can only be rebutted by clear and convincing evidence.

### B.        Exhaustion Requirements

It is well established that the exhaustion doctrine, codified at 28 U.S.C. §§ 2254(b)-(c), precludes granting habeas relief with respect to a claim for which state-court remedies have not been properly exhausted.  E.g., Rhines v. Weber, 544 U.S. 269, 274 (2005); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001).  Proper exhaustion has two components:  First, the claim must be "fairly presented," either by referring to the particular federal constitutional right or citing to a state or federal case that raises the pertinent constitutional issue.  Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005); Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999) ("A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits.").  Second,  the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addition, there are three other aspects of the exhaustion doctrine that should be mentioned. The first is that the exhaustion doctrine is satisfied if there are no state-court remedies available and

exhaustion would be futile.  E.g., Armstrong v. Iowa, 418 F.3d 924, 926-927 (8th Cir. 2005).  The second is that Rose v. Lundy, 455 U.S. 509 (1982) prohibits a petitioner from proceeding with a "mixed petition" of exhausted and unexhausted claims.  See also Rhines v. Weber, 544 U.S. at 273-274.   The  third  is  that  § 2254(b)(2)  authorizes  the  court  to  deny  a  claim  on  the  merits notwithstanding a failure to exhaust.  E.g., Gringas v. Weber, 543 F.3d 1001,  2008 WL 4489678, *2 (8th Cir. 2008).

## III.    ANALYSIS

### A.    Threshold Defenses

#### 1.    Exhaustion

The State argues that Claims 2 through 7 are unexhausted, claiming that Bertram failed to present the legal bases to the state courts for Claims 2 through 6 and to present the factual bases for Claim 7.  Also, because Claim 1 has been properly exhausted, the State argues  Bertram's petition should  be  dismissed  because  of  the  prohibition  against  mixed  petitions  of  exhausted  and unexhausted claims imposed by Rose v. Lundy, supra.

After careful review of the state-court record, it appears that Claims 2 through 6 were presented to the state courts and have been exhausted.  However, not all of the claims assert a federal constitutional violation.  This point will be addressed later.

Claim 7 presents a closer question because of Bertram's refusal to participate in the state-court evidentiary hearing on his claims of ineffective assistance of counsel.  However, despite this refusal, it appears the claims of ineffectiveness have been sufficiently exhausted.  This is because his ineffective assistance claims, such as they are, largely involve the "failure" of trial and appellate counsel to assert legal defenses that Bertram believes should have been advanced.  Bertram has

9

made his legal arguments, such as they are, and, in terms of factual development, the trial court and appellate court record are available if there is any question as to what or was not argued by his attorneys.

### 2.      Failure to State a Federal Constitutional Claim

Habeas corpus relief under Section 2254 is limited to instances where a person is in custody pursuant to the judgment of a state court that violates the Constitution, laws, or treaties of the United States.  28. U.S.C. § 2254(a).  It is not available to correct state-law errors. Estelle v. Mcguire, 502 U.S. 62, 68 (1991).  The State argues that Claims 2 through 6 fail because they do not allege a federal constitutional violation.

It appears from both Bertram's 2254 petition and the state-court record that Claims 4, 5, & 6 raise only issues of state law and do not allege a violation of the Constitution or federal law. Consequently, these claims fail to state a claim for federal habeas relief and are subject to dismissal for this reason.

Bertram alleges in his 2254 petition with respect to Claim 3 that the TRO was "overbroad, a prior restraint" that "prohibited innocent and Constitutionally protected conduct."  (Doc. No. 1). Similarly, his state application for state post-conviction relief cited violation of the "due process clause of the Fourteenth Amendment of the U.S. Constitution." (Doc. No.  10, Ex.10 at p. 44). These references are sufficient to state a claim for a federal constitutional violation.

As for Claim 2, the situation is more ambiguous.  However, to the extent Bertram is attempting to claim a due process violation based on the use of the disorderly conduct order as evidence, similar to the arguments that Bertram advances with respect to the default divorce judgment in Claim 1, Claim 2 should be considered.  This is because Bertram has maintained

throughout all of his state-court proceedings and in his briefing in this case that the disorderly conduct restraining order was not competent evidence because it was defective and that without it there was not sufficient evidence for his conviction for violating the restraining order.

### B.    Claims 1 & 2

While somewhat difficult to discern from Bertram's arguments, it appears that Claims 1 & 2 involve a challenge of his convictions for trespass and for having violated the disorderly conduct restraining order on two grounds.  One is a challenge of the sufficiency of the evidence, particularly in terms of any scienter requirements, and the other argument is that the default divorce judgment and the disorderly conduct restraining order were not competent evidence due to their defects and that without them the evidence would not have been sufficient to support the convictions.  While there may be differences between a due process argument premised simply on insufficiency of the evidence and an argument that a conviction was based on evidence that was so incompetent  it violated federal due process, any differences are not material here since both arguments fail.

Bertram asserted the arguments he now makes with respect to Claims 1 & 2 in both his state-court direct appeal and in his proceedings for post-conviction relief.  The North Dakota Supreme Court addressed the merits on direct appeal and summarily affirmed the trial court's dismissal of the arguments on res judicata grounds in the post-conviction relief proceeding.  Consequently, when evaluating the state court's treatment of Claims 1 & 2 through the prism of AEDPA, the court should look to the North Dakota Supreme Court's treatment of the claims on direct appeal to determine if it was (1) directly contrary to clearly established federal law as enunciated by the United States Supreme Court, (2) an objectively unreasonable application of Supreme Court precedent, or (3) based on an unreasonable determination of the facts based on the evidence presented in the state-

11

court proceeding. <u>Mark v. Ault</u>, 498 F.3d 775, 783 (8th Cir. 2007)("we apply the AEDPA standard to the . . . 'last reasoned decision' of the state courts").

In rejecting the arguments that Bertram makes with respect to Claims 1 & 2, the North Dakota Supreme Court stated the following:

[¶ 4] Randy argues the district court erred in denying his motion for judgment of acquittal based on insufficiency of the evidence.

[¶ 5] In <u>State v. Noorlun</u>, 2005 ND 189, ¶ 20, 705 N.W.2d 819 (citations omitted), we outlined our standard of review for challenges to sufficiency of the evidence:

In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt. Moreover, a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict.

[¶ 6] A person is guilty of criminal trespass if, knowing he is not licensed or privileged to do so, he enters or remains in a dwelling. N.D.C.C. § 12.1-22-03(1). "[P]rivilege is the freedom or authority to act and to use property.'" <u>State v. Morales</u>, 2004 ND 10, ¶ 10, 673 N.W.2d 250 (quoting <u>State v. Ronne</u>, 458 N.W.2d 294, 297 (N.D.1990)). A person is privileged if he naturally may be expected to be on the premises often and in the natural course of his duties or habits. Morales, at ¶ 10. A person is licensed to be on property if the entry was consensual. <u>State v. Purdy</u>, 491 N.W.2d 402, 410 (N.D.1992).

[¶ 7] A person acts knowingly if "when he engages in the conduct, he knows or has a firm belief, unaccompanied by a substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1-02-01(1)(b). A person's knowledge need not be absolute, but must be only a firm belief unaccompanied by a substantial doubt. <u>State v. Kaufman</u>, 310 N.W.2d 709, 713 (N.D.1981). A person's

knowledge depends on all the surrounding facts and circumstances and is a factual question that may be established by circumstantial evidence. Id. at 713-14.

[¶ 8] Randy argues he was not guilty of criminal trespass because he entered a dwelling he had resided in for the last 11 to 14 years. He argues the default divorce judgment, which gave possession of the dwelling to Joan, was an illegal judgment and was subsequently determined to be invalid. He claims he entered the house to retrieve property that even the illegal judgment recognized as his. He argues that before he entered the house, he had been told by three lawyers that he could enter it, and based on that legal advice, he claims he believed he was entitled to enter the house. He asserts the State failed to prove beyond a reasonable doubt that he was not in fact both licensed and privileged to enter the house, much less that he actually knew he was not licensed or privileged.

[¶ 9] Randy admitted he received the divorce decree, which awarded Joan the parties' home, before February 8, 2004. Joan testified she informed Randy he could not come to the house without her approval, and Randy admitted he had been told not to come to the house without her approval. Joan testified she had changed the locks on the house. According to Randy, he attempted to call Joan on his cell phone from her garage before he entered her house through a window, but there was no answer. Joan testified she did not receive a phone call from Randy on the morning of February 8, 2004, but awoke and discovered Randy in her residence. She testified she called the police and she found an opened window and a crowbar in the television room in her house. Randy admitted he entered the house through the window.

[¶ 10] Williston Police Officer Darren Cody testified he arrived at Joan's house and discovered Randy inside. Officer Cody testified Randy took off running through the house, shutting doors behind him and eventually fled to the garage where he nailed the door shut. Officer Cody testified he saw a crowbar in the television room and an open window with footprints in snow outside the window.

[¶ 11] We conclude the evidence and reasonable inferences from the evidence, viewed in the light most favorable to the verdict, are such that a rational fact finder could find Randy knew he was not licensed or privileged to enter Joan's house. We reject Randy's claim that he was entitled to rely on the advice of attorneys. Legal advice generally is not a defense to a criminal prosecution, but in some circumstances may be used to negate the requisite mens rea. State v. Thorstad, 261 N.W.2d 899, 904-06 (N.D.1978). See generally 21 Am.Jur.2d Criminal Law § 156 (1998). Here, Randy was not precluded from testifying that he relied upon the legal advice of attorneys in entering the house, and the jury nevertheless assessed all the surrounding facts and circumstances and determined he knew he was not licensed or privileged to be on the premises. We also reject Randy's claim he was entitled to be in the house because the default divorce judgment was later reopened. In other

contexts, this Court has said an invalid order must be obeyed until stayed or reversed by orderly review. State v. Zahn, 1997 ND 65, ¶ 14, 562 N.W.2d 737. The divorce decree had not been reopened when Randy entered the house, and the later proceedings on that judgment do not, as a matter of law, relieve him from criminal liability for criminal trespass.

[¶ 12] In assessing claims about the sufficiency of the evidence, we do not weigh conflicting evidence or judge the credibility of the witnesses. Noorlun, 2005 ND 189, ¶ 20, 705 N.W.2d 819. Under our standard of review of jury verdicts, we conclude sufficient evidence existed for the jury to find Randy knew he was not licensed or privileged to enter Joan's house. We therefore uphold Randy's conviction for criminal trespass.

Bertram I, at ¶¶'s 4-12.

A careful review of the trial record supports the facts relied upon by the North Dakota Supreme Court in addressing the arguments presented by Claims 1 & 2.[3] And Bertram, in any event, has failed to overcome the presumption of correctness that this court must apply under AEDPA to the state-court's determination of the facts. Liggins v. Burger, 422 F.3d 642, 647 (8th Cir. 2005).

With respect to the North Dakota Supreme Court's application of the law, the standard it used to adjudicate Bertram's claims of insufficiency of the evidence is one the United States Supreme Court held in Jackson v. Virginia, 443 U.S. 307 (1979) to be required by the Due Process Clause of the Fourteenth Amendment, i.e., "whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  And, with respect to Bertram's argument that the default divorce judgment and the disorderly conduct restraining order were "void" at the time he committed the subject offenses and not competent evidence, the North Dakota Supreme Court relied upon the well-established legal principle that an orderly society requires that court orders and

---

[3]  The citations to the record that support the court's determination of the facts are detailed in the brief in support of the State's Motion to Dismiss and need not be repeated here.

judgments be obeyed until they are stayed or reversed and that Bertram's argument as to their alleged invalidity was not a defense to the criminal prosecution. See, e.g., Walker v. City of Birmingham, 388 U.S. 307, 320 (1967); United States v. United Mine Workers, 330 U.S. 258, 293-294 (1947) (court orders must be obeyed until reversed by orderly and proper procedures); In re Criminal Contempt Proceedings against Gerald Crawford, Michael Warren, 329 F.3d 131, 138 (2nd Cir. 2003); In re Providence Journal Co., 820 F.2d 1342, 1345-46 (1st Cir. 1986).

It is true that courts have recognized limited exceptions to the well-established principle that invalid court orders and judgments must be obeyed until they are stayed or reversed, such as when the issuing court lacked jurisdiction or possibly in the case of a transparently unconstitutional court order that acts as a prior restraint on pure speech. In re Providence Journal Co., 820 F.2d at 1346-1353; see Martin v. Wilks, 490 U.S. 755, 790 n.28 (1989)(superseded by statute on other grounds). But none of those exceptions are applicable here. Default judgments are expressly provided for by North Dakota law under N.D. R. Civ. P. 55, and there is no question that the state district court had jurisdiction when it entered the default judgment. N.D. Const., Art. VI., § 8; N.D.C.C. § 27-05-06. Further, the default divorce judgment cannot be seriously described as transparently unconstitutional in terms of its award of the marital home to the ex-wife.

In summary, the North Dakota Supreme Court's treatment of Claims 1 & 2 was not constitutionally deficient, much less directly contrary to, or an unreasonable application of, prior United States Supreme Court precedent. Given also that there was no unreasonable determination of the facts, Claims 1 & 2 are without merit.

**C.     Claim 3**

Bertram argues that the disorderly conduct restraining order was constitutionally deficient because it was overbroad and imposed a prior restraint on innocent conduct.  In particular, he argues that there were no exceptional circumstances justifying a total ban on contact with his wife.

It appears these arguments were raised for the first time in the proceeding seeking post-conviction relief and that they were not addressed on the merits by either the state district court or the North Dakota Supreme Court.  As noted earlier, the district court summarily dismissed all of the arguments raised by Bertram in his petition for post-conviction relief on res judicata grounds, except for the claims of ineffective assistance of counsel, and the North Dakota Supreme Court summarily affirmed the district court's denial of Bertram's petition for post-conviction relief.

When a federal claim has not been adjudicated by the state court on the merits, AEDPA deference is not appropriate, since § 2254(d), by its terms, applies only when the state court has made a merits determination. E.g., Brown v. Luebbers, 371 F.3d 458, 460-461 (8th Cir. 2004); Taylor v. Bowersox, 329 F.3d 963, 967-968 (8th Cir. 2003).  If AEDPA deference is not appropriate, then the pre-AEDPA standard of *de novo* review applies to questions of law and mixed questions of law and fact. See Brown v. Allen, 344 U.S. 443 (1953); Williams v. Taylor, 529 U.S. at 400-402 (O'Conner, J. concurring opinion); Canaan v. McBride, 395 F.3d 376, 383 (7th Cir. 2005); Clemons v. Luebbers, 381 F.3d 744,  756 n.8 (8th Cir. 2004); Taylor v. Bowersox, 329 F.3d at 967-68; Robinson v. Crist, 278 F.3d 862, 865 (8th Cir.2002) (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir.2001)); Appel v. Horn, 250 F.3d 203, 211-12 (3rd Cir. 2001).

Turning to the merits, the restraining order prohibited Bertram from engaging in disorderly conduct toward his wife, having any contact with her except through an attorney, and coming within

16

100 feet of her residence or place of employment. (Docket No. 11-5).   Restraining orders limiting contact between the parties in a divorce action are common.  See 24 Am. Jur. 2d Divorce and Separation § 266.   In this case, the disorderly conduct restraining order was authorized by statute and the statute provided a mechanism for hearing challenges.  See N.D.C.C. § 12.1-31.2-01.

Bertram has not cited any authority that supports his "overbreadth" and "prior restraint" arguments in this context. Moreover, the restrictions imposed by the disorderly conduct restraining order, even if somehow constitutionally objectionable, were not transparently so, such that Bertram had the right to ignore them without subjecting himself to criminal liability.  See Walker v. City of Birmingham, supra; In re Providence Journal Co., supra; cf.  Hill v. Colorado, 530 U.S. 703 (2000); Rowan v. U.S. Post Office, 397 U.S. 728 (1970).

Claim 3 fails even absent AEDPA deference.

### D.    Claim Seven--Ineffective Assistance of Counsel

#### 1.    Governing Law

Under  Strickland v. Washington, 466 U.S. 668 (1984), a defendant who asserts ineffectiveness of counsel must ordinarily demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defendant.[4]  The test for deficient performance under the "first Strickland prong" is whether counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688; Rompilla v. Beard, 545 U.S. 374,

---

[4]  There are three situations in which a Sixth Amendment violation may be presumed without  consideration of the "performance" and "prejudice" components of Strickland: (1) when the accused is actually or constructively denied counsel during a critical stage of the criminal proceeding, (2) when counsel fails to subject the government's case to a meaningful adversarial testing, which failure must be complete and not limited to isolated portions of the proceeding, or (3) when circumstances are present that even competent counsel could not render effective assistance. E.g., Bell v. Cone, 535 U.S. at 695-697; United States v. White, 341 F.3d 673, 677-679 (8th Cir. 2003).

380 (2005); Pfau v. Ault, 409 F.3d 933, 939 (8th Cir. 2005).  In making this determination, a state

or federal court must:

> ". . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. *Id.* at 689, 104 S.Ct. at 2065.

Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995).  When the issue involves a matter of trial strategy,

there is a strong presumption that the strategy was sound and does not amount to ineffective

assistance. Bell v. Cone, 535 U.S. 685, 698 (2002); Williams v. Bowersox, 340 F.3d 667, 672 (8th

Cir. 2003).  Likewise, the same holds true in judging trial counsel's performance with respect to

claims of inadequate investigation. Rompilla, 545 U.S. at 381("In judging the defense's

investigation . . . hindsight is discounted by pegging adequacy to 'counsel's perspective at the time'

investigative decisions are made . . . and by giving a 'heavy measure of deference to counsel's

judgments.'") (quoting Strickland , 466 U.S. at 689 & 691).

Under the "second Strickland prong," prejudice is only shown when "there is a *reasonable

probability* that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." E.g., Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (quoting Strickland, 466 U.S.

at 694 and adding emphasis); Perry v. Kemna, 356 F.3d 880, 888 (8th Cir. 2004).  "A reasonable

probability is a probability sufficient to undermine the confidence in the outcome." Woodford, 537

U.S. at 23 (quoting Strickland, 466 U.S. at 694).

When a state court has addressed a petitioner's ineffective-assistance claims on the merits

and applied the Strickland tests, the federal courts must accord the state court's determination the

deference required by 28 U.S.C. § 2254(d).  Rompilla, 545 U.S. at 380.  Assuming there are no

issues with respect to the state court's findings of fact, the federal court's review is limited to the

determination of whether the habeas petitioner has met the burden of proving that "the state court

applied <u>Strickland</u> to the facts of the case in an objectively unreasonable manner." <u>Woodford</u>, 537

U.S. at 25; <u>see also</u> <u>Rompilla</u>, 545 U.S. at 380.  Most recently, the Supreme Court has characterized

the application of the <u>Strickland</u> standard through the prism of AEDPA as amounting to a "doubly

deferential" standard of review.  <u>Knowles, Warden v. Mirzayance</u>, __ U.S. __, 129 S.Ct. 1411, 1420

(2009).

Finally, when a defendant raises multiple claims of ineffective assistance, each claim must

be examined independently. <u>Hall v. Luebbers</u>, 296 F.3d 385, 392-93 (8th Cir. 2002); <u>Griffin v. Delo</u>,

33 F.3d 895, 903-04 (8th Cir. 1994).

## 2.    Discussion

Bertram argues his trial and appellate counsel were ineffective in failing to raise at trial the

arguments that he had advanced separately  in Claims 1 through 6.   Given that these claims are

easily disposed of without applying AEDPA deference, there is no need to decide whether AEDPA

should be applied to some or all of the claims.[5]

---

[5]  As noted earlier, Bertram refused to substantively participate in the post-conviction hearing on his ineffective
assistance claims.  Bertram's argument, in part, was that further evidence was unnecessary and that he had made the
arguments he believed he needed to make with respect to his ineffective assistance claims in his written filings.  In
denying Bertram's claims of ineffective assistance, the state district court stated:

> The Court previously determined that Bertram would be allowed to seek post-conviction
> relief on the grounds of ineffective assistance of counsel. See, Order, May 9, 2007. Bertram has asked
> this Court to cancel this hearing.  He states he does not want the hearing, and in fact, holding the
> hearing would work to his detriment.  Bertram's brief for reconsideration, page 2.  Bertram reiterated
> his request to cancel the hearing in open court, September 21.
> At the hearing held on September 21, the Court advised Bertram that if he cancelled the
> hearing, the Court would construe it as a waiver of his claim of ineffective assistance of counsel.
> Further, if the hearing was cancelled there would be no record on this issue which could go before the
> North Dakota Supreme Court. Without a record, it would be all but impossible for the Supreme Court
> to determine whether counsel was, in fact, ineffective at his trial.  Bertram was advised that once an
> issue is waived in a proceeding, it is generally waived forever.  He would be precluded from again
> raising the issue of ineffective assistance of counsel.  Bertram would not acknowledge these

Claims 1, 2, & 3 present arguments that are without merit for reasons discussed previously. Obviously, there can be no ineffective assistance of counsel for failing to raise arguments that lack merit.  E.g., Thai v. Mapes, 412 F.3d 970, 979 (8th Cir. 2005); Parton v. Wyrick, 704 F.2d 415, 416-17 (8th Cir.1983).

The same applies to Claims 4, 5, & 6 in which Bertram makes what appears to be purely state-law arguments for why his ex-wife's petition for the temporary restraining order was deficient.[6] This is because, even if one assumes that the petition requesting the restraining order was deficient, the restraining order was issued and any deficiency in the petition was not a defense to the criminal prosecution for the reasons discussed with respect to Claims 1 & 2.  Consequently, there is no reason to believe that either the state district court or the North Dakota Supreme Court would have done anything differently had Betram's trial or appellate counsel made the arguments that are the basis for Claims 4, 5, & 6, assuming they did not do so.    At the very least then, Bertram has failed to satisfy the second Strickland prong with respect to any failure to advance the arguments encompassed within Claims 4, 5, & 6.

---

advisories, but persisted in stating that a hearing was not necessary.
      The Court determines that Bertram has waived his right to present any evidence on the issue of ineffective assistance of counsel.  There being no evidence from which the Court could conclude that ineffective assistance of counsel may have occurred, the claim of ineffective assistance of counsel is summarily denied. Section 29-32.1-09, NDCC.
(Doc. No. 10, Ex. 18 at p. 3-4).
      Given the foregoing, together with the fact that Bertram's arguments were primarily legal in nature and the trial record and the appellate record on direct appeal were presumably available to resolve any dispute as to whether his counsel made the arguments Bertram claims they failed to make, there appears to be a question as to whether the state district court's dismissal was based on waiver or whether it was based on the merits for "lack of evidence."  And, since the North Dakota Supreme Court summarily affirmed the district court's denial of Bertram's petition for postconviction relief, the question then becomes whether the AEDPA deference should be applied to the resolution of the ineffective assistance claims by the state courts.

[6] As previously noted, federal habeas relief is not available to correct state-law errors.  However, habeas relief may be available in appropriate cases afer applying Strickland standards if counsel was ineffective in failing to raise state-law arguments.  E.g., Mosby v. Senkowski, 470 F.3d 515, 521 (2d Cir. 2006); see Parton v. Wyrick, 704 F.2d 415, 416-17 (8th Cir.1983).

In summary, Bertram's arguments for ineffective assistance of counsel under Claim 7 are without merit.

## IV.   CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  When the court has rejected a petitioner's claim on the merits, the substantial showing required is that the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also, United States v. Lambros, 404 F.3d 1034, 1036 -1037 (8th Circ. 2005); Garrett v. United States, 211 F.3d 1075, 1076 -1077 (8th Cir. 2000).  In this case, Bertram has failed to demonstrate that reasonable jurists would disagree with the foregoing assessments.  Consequently, it is recommended that the court not issue a certificate of appealability.

## V.   CONCLUSION AND RECOMMENDATION

Accordingly, the following is **RECOMMENDED**:

1.   That the State's motion to dismiss (Doc. No. 8) be **GRANTED** and Bertram's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody be **DISMISSED WITH PREJUDICE**.

2.   That the court certify that an appeal from the denial of this motion may not be taken *in forma pauperis* because such an appeal would be frivolous and cannot be taken in good faith.

3.   A certificate of appealability not be issued with respect to any of the issues raised by Bertram.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to Local Rule 72.1(D)(3), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken.

Dated this 26th day of May, 2009.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge